CARIDAD BREA, demandante y recurrida, *v.* MIGUEL A. PARDO, *pro se,* y la SOCIEDAD DE BIENES constituida por él e IRMA SANTANA DE PARDO, demandados y recurrentes; ESTADO LIBRE ASOCIADO, interventor.

*Número:* R-82-166 *Resuelto:* 23 de junio de 1982

*R. Elfrén Bernier* y *José A. Cuevas Segarra,* abogados de los recurrentes; *Maricarmen Ramos,* abogada de la recurrida; *Esteban J. Muñoz,* abogado del interventor.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Al tiempo de su divorcio decretado por el Tribunal Superior de Caguas el 13 noviembre, 1959 por la causal de separación, el ahora demandado Miguel A. Pardo y la demandante Caridad Brea firmaron una estipulación[1] sobre alimentos post-divorcio y bienes que en cuanto concierne al presente recurso, dice:

1. El demandante Miguel A. Pardo pasará a la demandada Caridad Otilia Brea de Pardo, la suma de $75.00 semanales para los alimentos de ella, cuya suma es la misma que el demandante ha venido pasándole a la demandada desde hace mucho tiempo y está holgadamente dentro de sus medios económicos y la cual el demandante no podrá rebajar, ni solicitar que sea reducida, durante la vida de la demandada.

2. El demandante Miguel A. Pardo tomará una póliza de vida por la suma de $25,000 figurando como única beneficiaria la demandada Caridad Otilia Brea de Pardo, y durante la vida de la demandada el demandante no podrá cambiar dicha beneficiaria y vendrá obligado a pagar el importe total de las primas que devengue la aludida póliza, la cual se le entregará a la demandada tan pronto se expida.

3. . . . . . . . .

4. Las partes hacen constar que los únicos bienes gananciales[2] existentes consisten en el mobiliario, instrumental y demás equipo existente en la "Clínica Dr. Pardo" que posee y explota el demandante en un edificio arrendado en la calle Rosario #223 de Santurce, pero que por y en consideración a los anteriores convenios acordados en esta estipulación, la demandada renuncia definitivamente a toda reclamación

---

[1] Titulada *Estipulación sobre Alimentos y Honorarios de Abogado.*

[2] El recurrente informa en la *Solicitud de revisión* —pero no es hecho aceptado— que los únicos bienes gananciales existentes cuando se divorciaron en 1959 consistían en "5 gaveteros de metal mohosos, 10 camas de hierro viejo, una mesa de examen, un gabinete blanco pequeño para medicinas, una mesa de examen, otra pequeña para poner los instrumentos, 3 sillas de cojines, 12 sillas viejas de hierro, un escritorio de caoba y 2 sofás viejos, equipo que se había adquirido hacía ya años".

sobre la participación que a ella corresponde en esos bienes, excepto naturalmente el caso en que cualquiera de las obligaciones contraídas por el demandante bajo esta estipulación fuere incumplida.

El 22 septiembre, 1977 Caridad Brea dedujo demanda contra su ex-marido, doctor Pardo, y la esposa de éste, Irma Santana, reclamándoles pensiones alimenticias atrasadas desde 1965. Ella reside en New York hace años con su hija procreada en el matrimonio con el demandado; padece de arterioesclerosis y enfisema y en su protección la sala de instancia denegó por resolución de 12 septiembre, 1978 la solicitud de los cónyuges demandados para tomarle una deposición orientada hacia la investigación de su capacidad mental para consentir y promover esta litigación. En el transcurso del pleito, el co-demandado Pardo fue declarado incapaz por resolución del Tribunal Superior de 20 noviembre, 1979, y puesto bajo la tutela de su actual esposa; y de otro lado, la demandante obtuvo embargo sin fianza, en aseguramiento de efectividad de sentencia por $62,677.99 de la casa de vivienda en Reparto "Rodríguez Ema", Carolina.

El demandado le había pedido a su ex-esposa que lo relevara de la estipulación y rechazada su petición, el 19 enero, 1977 —ocho meses antes del inicio de la presente acción— presentó moción en la Sala de Caguas, suplicando al tribunal le relevara debido a su precaria condición, (3) sin más ingreso que una pensión de Seguro Social, de la cual es también beneficiaria la demandante; y otra moción en octubre de 1978, pidiendo que se le exima de mantener el seguro de vida acordado en la estipulación, por el mismo fundamento de indigencia.

Formuló contestación a la demanda en la que niega que adeude alimentos a su ex-esposa, aduciendo como defensas que la demandante ha recibido del Seguro Social una suma

---

(3) Tiene 80 años de edad, se desligó de su práctica de la medicina hace años.

mayor que la reclamada en la demanda; y que la acción alimenticia está total o parcialmente prescrita.

Fundada en falta de pago de la pensión alimenticia de $75 semanales desde enero de 1965, con excepción de $1,600 que remitió el demandado en fechas indeterminadas posteriores a aquélla; y en la cancelación de la póliza el 24 noviembre, 1978 por agotamiento de dividendos y préstamos acumulados, la demandante formuló moción de sentencia sumaria que fue acogida, dictándose sentencia por la Sala de San Juan el 16 marzo, 1982 que desestimó la defensa de prescripción y el abono de $16,868.60 percibidos por la demandante del Seguro Social entre agosto de 1967 y septiembre de 1977 por razón de dependencia del asegurado doctor Pardo, y condenó tanto a éste como a la sociedad de gananciales constituida con su tutora Irma Santana, al pago de pensiones alimenticias atrasadas por un total de $65,675 más sus intereses computados desde la fecha en que debió pagarse cada plazo semanal; y a que obtengan nueva póliza de vida o garanticen el importe de la sentencia; (4) e impuso costas y $1,000 de honorarios de abogado. Recurrió la parte demandada y toda vez que tenemos un escrito de oposición de la recurrida, se facilita la decisión bajo la Regla 50 del Reglamento de este Tribunal.

■ Incidió la sala de instancia al desestimar la defensa de prescripción sobre el supuesto de que la estipulación de 1959 es un contrato de transacción que absorbió la obligación alimenticia quitándole a ésta su naturaleza original y convirtiéndola en obligación personal dineraria que tiene término de prescripción de 15 años provisto en el Art. 1864 Cc.

■ La estipulación acordada y aprobada por el tribunal no es contrato concebido y concertado exclusivamente por la autonomía de los contratantes y exigible como tal,

---

(4) En su solicitud de revisión la sociedad conyugal recurrente informa como $100,000 el importe total de la sentencia.

sino sentencia que en el càso de alimentos queda sujeta a reajuste, modificación y hasta abrogación, según varíen las necesidades del alimentista y los medios económicos del alimentante. En *Roca* v. *Thomson*, 77 D.P.R. 419, 432 (1954), declaramos que un tribunal no tiene necesariamente que respetar una estipulación que le prive de su poder y obligación de investigar los hechos y conceder remedios equitativos en el ejercicio de su discreción de acuerdo con los hechos reales.(5) Mucho menos le obliga una estipulación que en su devenir resulta contraria a la ley, pues previene el Núm. 2 del Art. 150 Cc. que *cesará la obligación de dar alimentos* "[C]uando la fortuna del obligado a darlos se hubiere reducido hasta el extremo de no poder satisfacerlos sin desatender sus propias necesidades y las de su familia". 31 L.P.R.A. sec. 569.

El ordenamiento de prescripción de la obligación alimentaria aparece bajo el Art. 1866 Cc. (de igual texto que el 1.966 Cc. español) así:

> *Acciones que prescriben a los cinco años*
>
> Por el transcurso de cinco años prescriben las acciones para exigir el cumplimiento de las obligaciones siguientes:
>
> 1. La de pagar pensiones alimenticias.
>
> 2. La de satisfacer el precio de los arriendos, sean éstos de fincas rústicas o de fincas urbanas.
>
> 3. La de cualesquiera otros pagos que deban hacerse por años o en plazos más breves. 31 L.P.R.A. sec. 5296.

 Ya es aforismo de aceptación universal que aun cuando el derecho a alimentos es imprescriptible, la acción para reclamarlos está sujeta a prescripción. Hay un paralelismo entre la necesidad de alimentos, impuesta por exigencia diaria de la vida misma, y su reclamación por el alimentista, que es razón para que —perdida la contemporaneidad

---

(5) De irrealidad adolece este pleito entre personas cuya edad y pobre condición física —uno de ellos declarado incapaz— lleva al juez sentenciador a señalar la deficiencia en la identificación de áreas de controversia porque "ni una parte ni la otra podrían declarar al respecto debido a su estado de salud". (S., pág. 10.)

de la acción— surta efecto la prescripción extintiva. Puig Brutau[6] destaca la distinción entre el derecho unitario o global a pedir alimentos, que es imprescriptible, y el derecho a pedir el pago de *cada una de las pensiones vencidas*, que prescribe a los cinco años. El carácter prescriptible de la acción deriva del fundamento de la obligación, que es atender una *necesidad actual* del alimentista necesitado. "La regulación legal toma como base el criterio de que no se necesitan medios presentes para atender a la vida que ya ha transcurrido en el pasado";[7] principio revelado en el Art. 147 Cc. al ordenarse que los alimentos no se abonarán sino desde la fecha en que se interponga la demanda. La índole de la obligación alimenticia, dice Manresa,[8] ". . . aconseja la reducción del término para la prescripción del derecho a reclamarla, pues no siendo debidos los alimentos, por regla general, más que en el caso de ser necesarios para la vida del alimentista, la ley presume que no los necesita para dicho fin aquel que deja transcurrir tanto tiempo sin pedirlos, demostrando así con sus actos que cuenta con otros medios distintos para atender a las necesidades de su subsistencia".

La aplicación de la prescripción de cinco años en general a las prestaciones periódicas según Castán, "tiene la finalidad de evitar al deudor el quebranto y ruina que podría acarrearle la acumulación de rentas".[9] El plazo del Art. 1866 estimula la actividad del acreedor, porque quien, necesitando alimentos para su subsistencia, si había de percibirlos en plazos relativamente cortos impuestos por la necesidad —y el plazo fijado en la estipulación fue de solo

[6] J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1970, T. 4, Vol. 2, págs. 339–340.

[7] Puig Brutau, *op. cit.*, pág. 340.

[8] J. M. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1973, T. 12, pág. 1205.

[9] J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 10ma ed., Madrid, Ed. Reus, 1963, T. 1, Vol. 2, pág. 843.

una semana— deja de percibirlos o exigirlos al vencimiento de cada uno de ellos, "prácticamente está demostrando con su inactividad que falta la razón de ser de la constitución del vínculo; que no son necesarias las pensiones o las rentas para los fines a que fueron establecidas". ([10])

En Puerto Rico se ha resuelto por implicación que el término de prescripción de 5 años ordenado en el Art. 1866 Cc. es aplicable a una acción sobre alimentos de hijo previamente acordada en $20 mensuales entre demandante y demandado por convenio extrajudicial si el tribunal dio su aprobación a éste, incorporando a su decreto judicial dicho convenio. Hacemos alusión al carácter implícito de la adjudicación porque este Tribunal rechazó la defensa de prescripción del Art. 1866 por el solo fundamento de que las pensiones dejadas de satisfacer por el demandado lo fueron *después de iniciada la acción* de la demandante. *Rodríguez v. Morales*, 72 D.P.R. 35, 41–42 (1951).

■ Únicamente deja de aplicarse el plazo prescriptivo del Art. 1866 cuando el deudor alimentante *reconoce la deuda* de pensiones vencidas e impagadas —aquí el demandado negó adeudar pensión alguna— produciéndose una novación de la que surge la obligación por pagos atrasados como una puramente contractual. La naturaleza de la acción ejercitada es lo que ha de servir de base para aplicación del citado Art. 1866. Su regla de prescripción es aplicable solo en las reclamaciones en que se trate de pago de pensiones atrasadas que hubiere derecho a reclamar por años o en plazos más breves.

> . . . [A]unque la deuda provenga de la obligación de pagar pensiones de alimentos o de la de satisfacer el precio de

---

([10]) Q. M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T. 32, Vol. 2, pág. 834. Scaevola, como Castán, ve en la abreviación del término prescriptivo, propósito de evitar el empobrecimiento de los deudores que podría devenir de la exigencia del importe de los créditos correspondientes a un mayor número de años o períodos, y efecto de presunción de abandono o renuncia deducible de su no reclamación durante un tiempo relativamente excesivo, en relación con aquella brevedad impuesta. *Ibid.*, págs. 833–834.

arrendamientos, o de la de hacer efectivos otros pagos realizables por anualidades o por plazos más cortos, *si en vez de exigirse el importe independiente* de dichos conceptos *se acumula todo lo debido* por cualquiera de dichos conceptos, *y se reconoce por el deudor la deuda total, obligándose a satisfacer el débito* a que ascienden, *y a virtud de dicho reconocimiento se entabla la reclamación,* ésta pierde el peculiar carácter de la deuda, puesto que ha habido *una nueva obligación que ha novado la primitiva,* y el objeto de la demanda no es ya el pago de las pensiones, arriendos o débitos que motivaron el reconocimiento de deuda, sino la efectividad de la obligación contraída en dicho reconocimiento, y, en su virtud, la acción derivada de él para exigir el pago del débito *reconocido* en dicho acto tiene que tener la duración de todas las acciones personales. (Énfasis nuestro.) J. M. Manresa, *Comentarios al Código Civil Español,* 6ta ed. Madrid, Ed. Reus, 1973, T. 12, págs. 1206-1207.

Identificada como obligación alimenticia en la estipulación la que reclama la demandante, es de particular relevancia la expresión en Scaevola[11] al concurrir con Manresa:

. . . [T]éngase en cuenta que este plazo quinquenal sólo ha de ser aplicable respecto de la obligación parcial o periódica así establecida, o *sea económicamente identificada en la estipulación* y *en la exigencia,* como nacida ésta del respectivo título de constitución. Por ello, y porque se altera el título originario en otro caso, se dice que no es este plazo, sino el general de quince años de artículo 1.964, el aplicable cuando, no habiéndose cumplido voluntaria ni ejecutivamente el pago de las pensiones, *se reconoce el adeudo* de todas o parte de ellas y se reclama *el saldo resultante de la liquidación* de la obligación total o parcial, porque en tal caso, según se lee en las sentencias de 26 de octubre de 1904 y 16 de mayo de 1942, lo que se trata aquí de hacer efectivo no es, prácticamente el pago de anualidades aisladas, sino la *deuda contraída por virtud de ese reconocimiento.* (Énfasis nuestro.) Q. M. Scaevola, *Código Civil,* Madrid, Ed. Reus, 11ma ed., 1965, T. 32, Vol. 2, pág. 837.

---

[11] *Op. cit.,* T. 32, Vol. 2, pág. 837.

■ Es evidente que lo reclamado por la demandante es la obligación de dar alimentos declarada en el Art. 147 Cc., que no ha sido liquidada ni mucho menos reconocida por el demandado y que por tanto no ha sufrido novación que altere su primitivo origen, resultando enteramente aplicable el plazo quinquenal del Art. 1866 y prescrita toda acción y derecho a reclamar más allá de los cinco años que precedieron a la radicación de la demanda.

Los beneficios de Seguro Social recibidos por la demandante, toda vez que presumiblemente se originan en cotizaciones a dicho sistema de retiro impuestas sobre el trabajo y esfuerzo personal del asegurado doctor Pardo, podrían sustituir las pensiones no prescritas. La sala de instancia deberá recibir prueba sobre la cuantía y periodo cubierto por las mismas y hacer una determinación sobre adecuación a los propósitos indicados. Asimismo deberá el Tribunal Superior hacer una determinación sobre vigencia o extinción de la obligación de mantener una póliza de seguro o la existencia de alternativa dentro de la realidad económica con la que ha de conjugarse, en último análisis, la decisión de los distintos aspectos de este caso.

■ La cuestión suscitada tiene acogida y adjudicación por primera vez en la jurisprudencia patria, y la propia recurrida a la pág. 12 de su escrito de oposición reconoce los méritos del planteamiento de prescripción, por lo que no puede tacharse de temeraria la conducta procesal del demandado, máxime cuando el curso de su defensa lo ha determinado su tutora bajo la delicada responsabilidad de su cargo. *Cf. Morales Garay* v. *Roldán Coss*, 110 D.P.R. 701 (1981); *Rodríguez* v. *John Hancock Mutual Life*, 110 D.P.R. 1 (1980).

■ La prescripción quinquenal dispondría de parte del caso y dejaría la acción revisora de este Tribunal limitada a modificación de la sentencia, pero ésta aparece cuestionada a partir de la declaración de incapacidad porque se ha dictado a la sombra de la petición irresuelta del incapaz para

que se le exonere, por insolvencia, de la pensión alimenticia acordada hace 22 años. Este pleito no debe proseguir sin antes proveer a esta petición del incapaz. Al dejar sin resolver la referida petición sobre relevo de obligación alimenticia, el Tribunal Superior desatiende su inherente función tutelar, de principal guardián del bienestar del incapaz, que debe ejercer motu proprio [12] y aun en ausencia de petición —y aquí hay una olvidada— para proteger los intereses, podríamos decir, la subsistencia, del incapacitado.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García está conforme y además emitió opinión concurrente, a la que se une el Juez Asociado Señor Torres Rigual. El Juez Asociado Señor Rebollo López no participó en la decisión.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Torres Rigual.

I

Los hechos del caso están expuestos en la opinión del Tribunal. Surge que el 13 de noviembre de 1959, Miguel A.

---

[12] "La jurisprudencia ha destacado el papel del Juez como órgano de la tutela, declarando que al Juez de primera instancia ha encomendado la ley la misión de hacer en pro del sujeto a tutela todo lo que por error, incuria o mala fe deje de realizar o indebidamente lleve a efecto el [tutor] (res. de 3 de mayo de 1946 y sent. de 2 de julio de 1953); y que la intervención judicial reviste un carácter activo, pudiendo ser ejercitada por iniciativa propia en defensa de las personas necesitadas de protección tutelar, sin que en su actuación *ad tuendum* se hallen los tribunales subordinados necesariamente a la solicitud de parte (sent. de 5 marzo de 1947).

"En este sentido, Bofarull proclama que 'es digna de elogio la perseverante labor llevada a cabo por los Tribunales, especialmente el Supremo de Justicia, con sus resoluciones en la materia, para hacer eficiente la presencia e intervención de la autoridad judicial en la vida del organismo tutelar'." J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 8va ed., Madrid, Ed. Reus, 1966, T. 5, Vol. 2, pág. 287.

Pardo y Caridad Otilia Brea se divorciaron. El tribunal en su sentencia, a solicitud de las partes, incorporó expresamente una estipulación sobre alimentos y honorarios, cuyo alcance y cumplimiento es la génesis de este recurso. En síntesis, mediante la referida estipulación el señor Pardo acordó pasarle a la señora Brea "la suma de $75.00 semanales para los alimentos de ella, cuya suma es la misma que el demandante ha venido pasándole a la demandada desde hace mucho tiempo [la causal fue separación] *y está holgadamente dentro de sus medios económicos y la cual el demandante no podrá rebajar, ni solicitar que sea reducida, durante la vida de la demandante".* (Énfasis suplido.) Se obligó además a mantener sobre su persona, a favor de la señora Brea, una póliza de vida por $25,000. Adicionalmente, pactó el pago de honorarios por el proceso; la existencia de determinados bienes gananciales, a los cuales la demandada Brea renunció; y que la violación por el demandante de la estipulación constituiría desacato civil.

Así las cosas, el 22 de septiembre de 1977, la señora Brea demandó al señor Pardo y su actual esposa, Sra. Irma Santana, reclamándoles pensiones alimenticias atrasadas desde fines del 1964, la restitución de la póliza de vida, costas y honorarios. Contestada la demanda, en lo pertinente, se adujo que ella recibía en beneficios de Seguro Social una suma mayor de la que alega se le adeuda y la nulidad de la estipulación. Formularon reconvención por embargo ilegal.

Por sentencia sumaria, el tribunal condenó al señor Pardo y a la Sociedad Ganancial Pardo-Santana a pagar la suma de $65,675 en concepto de plazos alimenticios atrasados, intereses desde la fecha en que debieron ser satisfechos, a obtener una póliza de vida (o acreditar ante el Tribunal haber constituido una garantía análoga para la eventualidad de que le premuriera), las costas y $1,000 de honorarios de abogado.

A solicitud de la parte perdidosa Pardo-Santana, revisamos.

## II

La estipulación en que se basa la causa de acción es una en cobro de alimentos. No se fundamenta en un contrato. La estipulación quedó fundida (*merged*) en la sentencia *Valdés* v. *Hastrup*, 64 D.P.R. 595, 600 (1945). Su validez, efectos y reclamos arranca de esa incorporación por la rúbrica judicial. Esencialmente, aunque se origina en un acuerdo de voluntades previo, su eficacia legal nace en virtud de la sentencia de divorcio. Esa circunstancia de por sí es suficiente para descartar la tesis errónea del tribunal de que la obligación asumida no es alimenticia —que se rige por el término prescriptivo de 5 años— sino una obligación dimanante de un contrato que engendra un derecho personal susceptible de ser reclamado en o antes de 15 años. Por el contrario, la doctrina científica sólo admite un desdoblamiento hacia una figura contractual novada, cuando el convenio versa sobre pensiones alimenticias *vencidas*, no futuras, mediante convenio reconocido por el alimentante. J. M. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1973, T. 12, págs. 1206–1207; Q. M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T. 32, Vol. 2, pág. 837.

Aquí la estipulación integrada a la sentencia fue con relación a pensiones alimenticias post-divorcio. En consecuencia, resulta aplicable el término prescriptivo de 5 años consagrado taxativamente en el inciso 1 del Art. 1866 del Código Civil para este tipo de acciones. 31 L.P.R.A. sec. 5296. *Lausell Marxuach* v. *Díaz de Yáñez*, 103 D.P.R. 533 (1975) es distinguible. Dicho caso giraba en torno a un ataque a *parte* de la estipulación, en particular la administración de un bien inmueble y su división como objeto ganancial. Como cuestión de hecho, Lausell logró una rebaja a la pensión alimenticia que había pactado antes en la misma estipulación. Nunca se planteó la validez de la pensión en la dimensión que aquí consideramos.

Aclarada la naturaleza y término prescriptivo que gobierna la estipulación, analicemos su validez en lo concerniente a la cuantía. La regla general es que la determinación de la cuantía de los alimentos opera sobre el concepto de *proporcionalidad.* Éste a su vez se nutre de una evaluación del patrimonio, medios y capacidad de trabajo del alimentista *vis-à-vis*, las necesidades del alimentista. Aunque el Código acepta pactos como fuentes de responsabilidad en alimentos y otorga cierta libertad a las partes, ello no es absoluto. Art. 151, Código Civil, 31 L.P.R.A. sec. 570. Este mismo precepto dispone que las normas generales sobre alimentos son aplicables a tales convenios, aunque tiene como fuerza limitante el principio de que el pacto no sea contrario a la ley, moral u orden público. *Viera* v. *Sucn. Goitía*, 55 D.P.R. 299, 302 (1939). Scaevola informa:

¿Qué consecuencias se derivan de todo lo dicho? Las que a continuación se expresan, claras y concluyentes: 1a., que tratándose de las personas que tienen derecho a alimentos, según el artículo 143, podrán establecerse los *pactos* que se estimen convenientes sobre lo accidental de dicho derecho (modo y lugar del cumplimiento de la prestación y aún la cuantía de ésta); *pero no sobre lo esencial del mismo (proporcionalidad entre la pensión y el capital, renuncia y transmisión), puesto que entonces quedaría destruído el objeto de la ley* y se infringiría además la doctrina del art. 1,255, que prohibe consignar los pactos contrarios a las leyes que se tendrían como no puestos, a tenor del párrafo primero del art. 4°; 2a., que respecto de cualquiera otra persona de las no comprendidas en el citado art. 143, pueden convenirse con entera libertad cuantas condiciones deseen los interesados, siempre que no sean contrarias a la moral y buenas costumbres, ya que las prohibiciones del art. 151 atañen única y exclusivamente al derecho de alimentos por ministerio de la ley. (Énfasis suplido.)

Puig Peña destaca que "una condición fundamental que late en todo el disciplinamiento legal de la prestación alimenticia es la efectiva posibilidad económica del obligado a la misma". F. Puig Peña, *Tratado de Derecho Civil*

*Español*, Madrid, Ed. Revista de Derecho Privado, 1971, T. 2, Vol. 2, pág. 269.

En esta perspectiva y a la luz de los hechos del caso, ciertamente la cuantía de $75 semanales no presentaba ninguna dificultad. La capacidad del demandado Pardo al momento de pactarla y ser sentenciado era y es evidente. El problema versa sobre la cláusula que le prohíbe rebajar o solicitar reducción durante la vida de la señora Brea. Esta restricción choca contra varios principios. El primero, el de proporcionalidad en que descansa la determinación del monto de una pensión alimenticia. Y el segundo, atenta contra un aspecto esencial de la ley, pues las adjudicaciones sobre el alimento no constituyen cosa juzgada y por lo tanto no pueden estimarse con carácter de finalidad. *Fenning* v. *Tribunal Superior*, 96 D.P.R. 615 (1968); *Millán Rivera* v. *Solís Lazú*, 85 D.P.R. 478 (1962). La prohibición insertada en la estipulación y recogida en la sentencia de divorcio no puede erigirse como obstáculo a un examen y modificación ulterior por un tribunal. Puig Peña expone:

> ¿Qué deberá pagar el alimentante al alimentista? Ya hemos dicho que, en la hipótesis normal, los alimentos comprenden lo que es indispensable para el sustento, vestido, habitación, asistencia médica y educación e instrucción del alimentista cuando es menor de edad. El alimentante deberá, pues, tener en cuenta que eso es lo que debe cubrir, entregando a tal efecto lo necesario para ello. Pero ¿en qué cuantía? ¿Cómo se fijará la cantidad necesaria? *Si existe un pacto entre los interesados fijando la cantidad a entregar por la pensión alimenticia, deberá respetarse en tanto en cuanto no altere fundamental y sustancialmente las proporciones establecidas por las leyes, pues la jurisprudencia tiene declarado que no obstante la fijación convencional de la prestación alimenticia acordada por los interesados en ella, puede perfectamente el juzgador variar el monto de la pensión cuando crea que altera las proporciones establecidas en el artículo 146.* (Énfasis suplido.) *Op. cit.*, pág. 379.

En este sentido erró la sala sentenciadora al estimar que

estaba impedida de examinar la procedencia de la pensión debido a la prohibición pactada. En la medida en que es absolutamente nula y contraria a la ley la cláusula que veda la modificación en el monto de la pensión, y forma parte de la sentencia cuyo cumplimiento hoy se reclama, el demandado Pardo puede atacarla colateralmente. *Rodríguez v. Albizu*, 76 D.P.R. 631, 635 (1954); *Fernández v. Davison*, 80 D.P.R. 253 (1958). Adviértase sin embargo, que el poder de modificación se extiende a alimentos futuros y no a mensualidades vencidas. *Valdés v. Hastrup*, supra.

### III

Consideramos ahora la negativa del Tribunal a reconocer que se le abonaran a la deuda los beneficios de Seguro Social recibidos por la demandante Brea. Aunque la defensa de compensación no es esgrimible en acciones por alimentos *futuros* (ad futurum), esto es, los que todavía no se han devengado —Art. 149 Código Civil (31 L.P.R.A. sec. 568)— es oponible en reclamos de pensiones *atrasadas*. J. Puig Brutau, *Fundamentos de Derecho Civil*, 1970, T. II, pág. 337. Su razón estriba en que ya ha cesado el carácter de urgencia y perentoriedad que se le atribuye a una pensión no devengada. "El matiz de orden público que los alimentos propiamente dichos tienen desaparece en las pensiones atrasadas, que por ser tales, es decir, por su innecesariedad, se transforman en deuda ordinaria, y ya con esta condición deben estar adornadas de todos los caracteres que a la prestación normal asigna el Derecho de obligaciones." Puig Peña, *op. cit.*, pág. 273.

En el caso de autos, en lo que respecta a la deuda resultante en los cinco (5) años anteriores en que se funda la causa de acción de la demandante señora Brea, en teoría jurídica, la cuantía recibida a través del Sistema de Seguro Social podría abonarse como compensación. La dificultad de así adjudicarlo en esta revisión estriba en que el informe está huérfano y carecemos de los elementos de juicio

respecto a si ello fue o no contemplado por las partes, ya que la estipulación y sentencia guardan silencio. Nótese que era un evento conocido o que debían conocer las partes por razón de sus edades, cercanas a la edad de tal beneficio. Igual enfoque se impone en cuanto al seguro de vida. Aunque esa obligación no es contraria a la ley, como tampoco atenta al interés público, es menester que el tribunal de origen examine su razón de ser y su equivalencia de haber sido cancelado dicho seguro. Nótese que la subsistencia de esa póliza formó parte importante del pacto total mediante el cual la señora Brea renunció a su participación ganancial "en el mobiliario, instrumental y demás equipo de la Clínica Dr. Pardo". [1]

## IV

El mandato de este Tribunal que devuelve el caso a instancia con la encomienda de resolver y pasar juicio sobre nuestros pronunciamientos, es correcto. La doctrina imperante es que la facultad de modificar una pensión alimenticia, "sólo se extiende a alimentos futuros, y no a mensualidades ya vencidas". *Valdés* v. *Hastrup*, supra, pág. 601. Manresa, *op. cit.*, T. 1, pág. 836; Puig Peña, *op. cit.*, pág. 303. La reducción en la cuantía de una pensión alimenticia fijada no se retrotrae automáticamente a la fecha en que se formula judicialmente una solicitud al efecto, sino que es una cuestión que descansa en el juzgador, en virtud de los hechos en cada caso. *Fernández* v. *Davison*, supra. En la medida en que los dos protagonistas principales de este caso son "víctima[s] de la enfermedad, la penuria . . . [y] demás azares de su existencia", *Suria* v. *Fernández Negrón*, 101 D.P.R. 316, 319 (1973), debe el tribunal a quo disponer sabia y justicieramente las cuestiones pendientes.

---

[1] En su oposición la señora Brea objeta que esos fueran los únicos bienes disponibles, señalándonos que no se desfiló prueba. (Alegato de la recurrida, pág. 7 *in fine*.)