*861 TEXTO COMPLETO DE LA SENTENCIA
Los peticionarios Leonardo Pórtela Morales y Nancy Torres Bulls nos solicitan que revisemos la resolución emitida el 24 de agosto de 2009 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, que les ordenó cumplir con el descubrimiento de prueba en el caso de alimentos que su ex nuera, la recurrida María Isabel Blanco Garrido, inició contra el hijo de ambos, y en el que los trajo al pleito como terceros demandados. Alegan que la recurrida pretende que ellos paguen a sus nietos menores de edad la pensión fijada a su hijo Leonardo Pórtela Torres, la que éste no paga por alegada insuficiencia económica, aunque los progenitores de los alimentistas tienen recursos para atender las necesidades de su prole.
Emitimos a la parte recurrida una orden de mostrar causa por la cual no debíamos expedir el auto de certiorari y revocar la resolución recurrida. La parte recurrida cumplió con nuestra orden y con el beneficio de su comparecencia, resolvemos expedir el auto de certiorari solicitado y revocar la resolución recurrida.
Veamos los antecedentes procesales que justifican esta determinación.
*862 I
El Sr. Leonardo Pórtela Torres y la Sra. Maria Isabel Blanco Garrido contrajeron matrimonio el 7 de septiembre de 1990 y procrearon tres hijos: L.P.B., J.C.P.B. y C.P.B., nacidos el 26 de marzo de 1991, el 20 de enero de 1993 y el 31 de mayo de 1995. Posteriormente, el 6 de abril de 2005, el Sr. Pórtela incoó una demanda de divorcio por la causal de ruptura irreparable y la Sra. Blanco presentó una reconvención por la causal de trato cruel. En el pleito de divorcio, la Sra. Blanco solicitó la fijación de una pensión alimentaria provisional para los menores y una pensión pendente lite para ella, así como la fijación final de ambas pensiones.
La Sra. Blanco solicitó una pensión suplementaria por gastos de vivienda y mantenimiento de la residencia ubicada en Dorado Beach East; gastos de colegio privado para los tres menores; gastos médicos no cubiertos por el plan médico, ya que uno de los hijos tiene una condición cardíaca; y otros gastos extraordinarios, ya que la hija toma clases de francés y de jazz y uno de los varones juega pelota.
En una vista de alimentos ante la Oficial Examinadora, las partes acordaron que el Sr. Pórtela pagaría una pensión de alimentos provisional de $5,000 mensuales y el plan médico familiar. El Tribunal de Primera Instancia acogió el acuerdo de las partes y fijó la pensión provisional por esa cantidad. En el pleito se suscitaron diversas controversias relativas al pago de la pensión provisional y a la fijación de la pensión final que no es necesario reseñar.
Entonces, el 30 de noviembre de 2006, la Sra. Blanco presentó una demanda contra tercero para incluir como alimentantes demandados al Sr. Leonardo Pórtela Morales y a la Sra. Nancy Torres Bulls, padres de su ex esposo, para que se les impusiera a ellos la obligación de proveer la pensión alimentaria fijada por el Tribunal de Primera Instancia al padre de los menores. Los terceros demandados solicitaron que se dictara una sentencia sumaria para desestimar la demanda en su contra, por el fundamento de que no se daban los criterios necesarios para configurar una causa de acción de alimentos en contra de los abuelos paternos, debido a que ninguno de los progenitores de los menores alimentistas estaba ausente, fallecido o incapacitado para proveer el sustento a sus hijos.
Mientras, continuaron los procedimientos para la fijación de la pensión definitiva. El Tribunal de Primera Instancia dictó una resolución y orden el 14 de mayo de 2007 en la que le imputó a la Sra. Blanco un ingreso equivalente al salario mínimo federal de $780 mensuales, ya que desde que contrajo matrimonio ésta dejó de trabajar y se dedicó al hogar y a los hijos. Al Sr. Pórtela se le imputó un ingreso neto mensual de $11,458, a base de sus estados bancarios y los balances de sus tarjetas de crédito. A base de esos ingresos, el Tribunal de Primera Instancia fijó una pensión básica de $5,107.96 y una pensión suplementaria de $4,280.50 mensuales. Al alimentante le correspondía el pago del 93% de la pensión suplementaria. La pensión resultante ascendió a $9,388.46 mensuales, retroactiva al 5 de abril de 2005, que debía pagarse directamente a la Sra. Blanco. [1] La pensión retroactiva acumulada se fijó en $98,945.31. Como es de rigor en estos casos, en la resolución, el tribunal a quo apercibió a las partes que podían solicitar la modificación de la pensión fijada luego de transcurridos tres años o cuando existiera un cambio sustancial de las circunstancias.
En esa misma fecha del 14 de mayo de 2007, el Tribunal de Primera Instancia denegó la solicitud de desestimación y sentencia sumaria presentada por los abuelos. Éstos solicitaron la revisión de esa parte de la resolución y un panel hermano de este Tribunal emitió una resolución el 28 de septiembre de 2007 en la que denegó la expedición del auto de certiorari. [2] En esa ocasión, si bien este Tribunal reconoció que la responsabilidad de los abuelos en cuanto al pago de alimentos a sus nietos era subsidiaria, resolvió denegar la petición de certiorari de los abuelos para que se desestimara el caso en su contra, por considerar que existían controversias de hechos en cuanto a si el alimentante pagaba la pensión alimentaria que se le fijó; en cuanto a la capacidad económica del alimentante para cumplir con la pensión alimentaria impuesta; y en cuanto a si ambos padres estaban capacitados física y mentalmente para proporcionar alimentos a sus hijos menores de edad.
*863 A la fecha en que este foro apelativo dictó la resolución antes referida, la Sra. Blanco y los terceros demandados se habían cursado interrogatorios que estaban pendientes de contestarse. En virtud de la resolución dictada por este Tribunal, los terceros demandados solicitaron la paralización del descubrimiento de prueba en cuanto a ellos y solicitaron una orden protectora a esos efectos. La Sra. Blanco se opuso a la solicitud de paralización. El 15 de noviembre de 2007, el Tribunal de Primera Instancia declaró con lugar la solicitud de los terceros demandados y ordenó la paralización del descubrimiento de prueba en cuanto a ellos, al señalar que la acción contra los terceros demandados era prematura. De igual forma, la Sra. Blanco solicitó la paralización del descubrimiento de prueba que solicitaron respecto a ella los terceros demandados. El Tribunal de Primera Instancia ordenó la paralización solicitada mediante una orden emitida el 12 de diciembre de 2007.
No obstante lo anterior, el 29 de enero de 2009, la Sra. Blanco procedió a iniciar el descubrimiento de prueba a los abuelos de los menores respecto a sus ingresos y capacidades económicas. A esos efectos, le cursó un aviso de toma de deposición a cada uno de ellos. Los terceros demandados se opusieron al descubrimiento de prueba y argumentaron que el Tribunal de Primera Instancia paralizó el descubrimiento de prueba en cuanto a ellos hasta que se adjudicaran las controversias entre los litigantes originales, por lo que no procedía el descubrimiento de prueba de la Sra. Blanco respecto a los terceros demandados y viceversa.
El Tribunal de Primera Instancia ordenó a la Sra. Blanco a exponer su postura respecto a la oposición de los terceros demandados al descubrimiento de prueba. Ésta cumplió con lo ordenado y le indicó al tribunal a quo que el padre de los menores no pagaba la pensión alimentaria fijada para los menores y que sólo realizó dos pagos: un pago por $325 el 7 de abril de 2009 y otro pago por $702 el 21 de mayo de 2009, por lo que el alimentante adeudaba $84,469.14 de pensión alimentaria. Indicó que en una vista celebrada ante el tribunal a quo el 30 de marzo de 2009 ese foro autorizó el descubrimiento de prueba en cuanto a los terceros demandados y le ordenó a la Sra. Blanco presentar una moción por escrito para poder dar curso al descubrimiento de prueba y ésta así lo hizo. Les cursó un aviso de toma de deposición el 24 de abril de 2009.
En su moción, la Sra. Blanco sostuvo que se daban todas las circunstancias requeridas para activar la reclamación de alimentos en cuanto a los abuelos y que consistían en que: (1) el padre alimentante no pagaba la pensión alimentaria fijada desde hacía ocho meses; (2) el alimentante alegó un cambio sustancial en sus circunstancias y que no contaba con suficientes recursos económicos para cumplir con su obligación alimentaria; (3) las únicas dos aportaciones que el alimentante había hecho totalizaban $1,027, lo que no dio para cubrir ni una ínfima parte de las necesidades de los menores; (4) la demandante contra terceros no tenía capacidad económica para cubrir las necesidades de los menores; (5) las necesidades y la educación de los menores estaban al descubierto, por lo que tenían una necesidad urgente y apremiante de recibir la pensión alimentaria fijada; y (6) por información y creencia los terceros demandados tenían plena capacidad para satisfacer la pensión de los menores.
La Sra. Blanco también argumentó que de no concederse el descubrimiento de prueba solicitado, se dejaría a los menores en un estado de indefensión con el riesgo de que continuaran desprovistos de alimentos. Además, indicó que esa paralización dilataría aún más los procedimientos, en detrimento del bienestar de los menores. El Tribunal de Primera Instancia emitió una orden el 24 de agosto de 2009 en la que ordenó a los terceros demandados cumplir con el descubrimiento de prueba.
Inconformes con esa orden, los terceros demandados presentaron ante nos una petición de certiorari en la que plantean que el Tribunal de Primera Instancia cometió dos errores. En el primer señalamiento de error argumentan que la sentencia emitida por este Tribunal el 28 de septiembre de 2007 en el caso KLCE-2007-00892 tuvo el efecto de paralizar la causa de acción contra los abuelos hasta tanto se determine que ambos padres de los menores carecen de medios para prestar alimentos y que están impedidos de cumplir con su obligación. Además, arguyen que lo resuelto en la sentencia de este foro apelativo constituye la Ley del Caso y no puede revocarse por el Tribunal de Primera Instancia.
*864 En cuanto a este primer señalamiento de error, la parte recurrida arguye que la doctrina de la Ley del Caso no impide la reconsideración de una determinación, pues se trata de una doctrina al servicio de la justicia y no es férrea ni de aplicación absoluta.
En el segundo señalamiento de error, los terceros demandados plantean que al estar paralizada la causa de acción contra los abuelos, todo descubrimiento de prueba sobre su capacidad económica es irrelevante e impertinente a las controversias ante el Tribunal de Primera Instancia, por lo que esa información no está sujeta a ser objeto de descubrimiento de prueba. Por tal razón, sostienen que la orden del Tribunal de Primera Instancia dirigida a los terceros demandados para que se sometan al proceso de descubrimiento de prueba es contraria a derecho y debe revocarse.
La recurrida alega que el retraso del padre alimentante ha colocado a sus hijos en indefensión, por lo que los abuelos deben suplir los recursos que aquellos necesitan para su manutención, según el estilo de vida al que los acostumbraron sus padres.
n
Discutiremos conjuntamente los dos señalamientos de error.
La obligación alimentaria tiene su base legal en el Código Civil de Puerto Rico, Arts. 142-151, 31 L.P.R.A. sees. 561-570. Cuando se trata de hijos e hijas menores de edad, la fijación de la pensión alimentaria, a su vez, está regulada por legislación especial de eminente interés público, la Ley Especial para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada por la Ley Núm. 178 de 1 de agosto de 2003, 8 L.P. R.A. see. 501 et seq., y las Guías para Determinar y Modificar Pensiones Alimentarias en Puerto Rico, adoptadas el 8 de diciembre de 1989, al amparo de la Ley 5, ya citada, y la legislación federal aplicable. Estas guías constituyen hoy el Reglamento Núm. 7135 de 24 de abril de 2006, que entró en vigor el 24 de mayo de 2006 bajo la administración de ASUME.
El derecho a recibir alimentos también está protegido constitucionalmente porque se ubica bajo el palio del derecho a la vida y tiene su fundamento esencial en la maternidad y la paternidad biológica o jurídica. Const, del E.L.A. de Puerto Rico; Art. II, Sec. 7; Rodríguez Avilés v. Rodríguez Beruff, 117 D.P.R. 616, 621 (1986); Martínez v. Rivera Hernández, 116 D.P.R. 164, 168 (1985); Negrón Rivera y Bonilla, Ex Parte, 120 D.P.R. 61, 73 (1987). [3]
De conformidad con el Artículo 142 del Código Civil, 31 L.P.R.A. see. 561, los alimentos comprenden “todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia”, así como “la educación e instrucción del alimentista”. El Artículo 143 del Código Civil, 31 L.P. R.A. see. 562, regula la obligación de los progenitores en cuanto a los “hijos no emancipados que no viven en su compañía y sobre los cuales no tiene la patria potestad, y a hijos y otros parientes, no importa su edad, que tengan necesidad de alimentos, y siempre que el alimentante cuente con recursos para proveerlos”. Guadalupe Viera v. Morell, 115 D.P.R 4, 13 (1983). De este precepto surge, entonces, la obligación del progenitor no custodio de pagar una pensión alimentaria para cubrir las necesidades de los hijos e hijas que están bajo la custodia del otro progenitor, según su capacidad económica real. Esto no cohíbe la norma básica de que ambos progenitores tienen la obligación de alimentar a su prole en la medida de sus posibilidades económicas. Artículos 118 y 153 del Código Civil, 31 L.P.R.A. sees. 466 y 601.
Conforme con la legislación aplicable, cuando ambos progenitores no cumplen o no pueden cumplir con la obligación alimentaria hacia sus hijos e hijas, la ley le impone esa obligación a otros parientes. La obligación de los abuelos de prestar alimentos a sus descendientes surge de los Artículos 143 y 144 del Código Civil. 31 L.P. R.A. sees. 562 y 563. Sin embargo, la responsabilidad alimentaria de los abuelos es de carácter subsidiario, es decir, surge en aquellos casos en que ambos progenitores —o sus respectivas sociedades de gananciales — ,
*865 carecen de medios suficientes para sufragar cabalmente los alimentos de sus hijos e hijas. Así lo ha reiterado el Tribunal Supremo en varios casos. Véanse Vega etc. v. Vega Oliver, 85 D.P.R. 675, 682-683 (1962); Piñero Crespo v. Gordillo Gil, 122 D.P.R. 246, 252-253 (1988); Crespo v. Cintrón, 159 D.P.R. 290, 303 (2003). Esto es así porque la responsabilidad económica de mantener a los hijos e hijas es una obligación primaria y principal de los progenitores. Como se ha indicado, esa obligación legal y moral se sostiene sobre la relación paterno y materno-filial, por lo que su cumplimiento debe exigirse con el mayor rigor a los principalmente obligados. Soto Cabral v. E.L.A., 138 D.P.R. 298, 313 (1995); Rodríguez Sanabria v. Soler Vargas, 135 D.P.R. 779, 785-786(1994).
Sarah Torres Peralta, La Ley de Sustento de Menores y el Derecho Alimentario en Puerto Rico, San Juan 2006, págs. 5.60-5.68; Raúl Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, Vol. II., San Juan, Programa de Educación Jurídica Continua, Universidad Interamericana de Puerto Rico, págs. 1442-1443.
Por otro lado, el Código Civil expresamente dispone que “la cuantía de los alimentos será siempre proporcional a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo”. Art. 146, 31 L.P.R.A. see. 565. Raúl Serrano Geyls, Derecho de Familia de Puerto Rico, op. cit. pág. 1443.
La pensión alimentaria siempre está sujeta a revisión y puede modificarse por el cambio extraordinario en las circunstancias, como indica la citada Ley 5 y como reitera una extensa jurisprudencia, anterior y posterior a su aprobación. Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 73 (1987); Valencia, Ex parte, 116 D.P.R. 909, 914 (1986); García v. Acevedo, 78 D.P.R. 611, 617 (1955); Brea v. Pardo, 113 D.P.R. 217, 222 (1982).
Asimismo, los dictámenes sobre la obligación alimentaria nunca constituyen cosa juzgada; el tribunal puede siempre atender los reclamos del alimentista o del alimentante para regular cualquier aspecto de la relación jurídica que impone al segundo la obligación de mantener al primero por razón de sus nexos patemo-fdiales. Figueroa v. Del Rosario, 147 D.P.R. 121, 128-129 (1998). Así, pues, de surgir un cambio significativo en las necesidades económicas del alimentista o en los ingresos del alimentante, la pensión fijada podría modificarse. Salvo circunstancias extraordinarias, tal revisión podrá darse en un plazo de tres años, desde la última fijación. Art. 19, Ley 5 de 30 de diciembre de 1986, 8 L.P.R.A. see. 518; Figueroa v. Del Rosario, 147 D.P.R., a la pág. 128.
El Tribunal Supremo tuvo oportunidad de interpretar este artículo y destacó que las circunstancias que pueden constituir cambios sustanciales y pueden justificar la modificación del decreto alimentario antes de que transcurran los tres años son: “(i.) cuando están presentes cambios significativos o imprevistos en las circunstancias de cualquiera de las partes; (ii.) cuando se desconocía información, por causas no imputables a la parte perjudicada por el decreto; (iii.) cuando la aplicación de las guías mandatorias resulta en una cantidad diferente a la pensión corriente decretada en la orden o sentencia objeto de solicitud de modificación, o (iv.) cuando existe una situación de salud de un alimentista menor o incapacitado”. El peso de la prueba para demostrar que ha ocurrido un cambio sustancial en las circunstancias que estaban presentes al fijarse la pensión y la nueva cuantía le corresponde al alimentista. McConnell Jiménez v. Palau Grajales, 161 D.P.R. 734, 749 (2004).
III
Para comprender la corrección de la actuación impugnada, debemos hacer un recuento procesal del caso de autos.
A
Luego de fijada la pensión en controversia, el 7 de febrero de 2008, el padre de los menores solicitó una *866 revisión de la pensión alimentaria fijada antes de que transcurriera el término de tres años provisto para ello, porque ha habido cambios extraordinarios en sus fuentes de ingresos. En síntesis, argumentó que para ese momento su situación económica era precaria y le imposibilitaba continuar con el pago de la pensión alimentaria fijada de $9,388.46. Presentó una declaración jurada a esos efectos.
El Tribunal de Primera Instancia denegó la revisión de la pensión alimentaria por el fundamento de que no habían transcurrido tres años desde que se fijó la pensión. El padre de los menores recurrió a este Tribunal para revisar ese dictamen y mediante sentencia dictada el 30 de junio de 2008, este foro apelativo revocó la resolución y devolvió al caso para que se celebrara una vista evidenciaría para que el padre pudiera tener la oportunidad de probar sus aseveraciones sobre el cambio sustancial en sus circunstancias. [4]
Posteriormente, el padre de los menores presentó una moción en el Tribunal de Primera Instancia en la que reiteró los cambios sustanciales en sus circunstancias personales y su precaria condición económica y adujo, además, que había habido un cambio sustancial y material en las circunstancias económicas de la Sra. Blanco que abonaban a la revisión de la pensión y a la celebración de una vista. A esos efectos, alegó que para octubre de 2008 ocurrió un desarrollo no previsible, al convertirse la Sra. Blanco en miembro de la Sucesión de José Blanco Cestero. Según éste, ese hecho constituía un cambio dramático y sustancial en las circunstancias de la Sra. Blanco, porque en el haber de esa sucesión existían bienes muebles e inmuebles valorados en millones de dólares. El Sr. Pórtela Torres distinguió el cambio en sus circunstancias como un cambio independiente y no relacionado con el cambio acaecido en las circunstancias de la Sra. Blanco. No obstante destacó que era un dato que debía considerarse al momento de evaluar su solicitud de revisión.
El Tribunal de Primera Instancia ordenó una vista que luego pospuso y le advirtió al padre de los menores de su posible encarcelamiento si no pagaba pensión alimentaria atrasada. Inconforme, el Sr. Pórtela Torres recurrió nuevamente a este Tribunal y un panel hermano modificó el dictamen y dispuso que si para la celebración de la vista del 25 de febrero de 2009 el Sr. Pórtela Torres tenía deudas por concepto de pensión alimentaria se debían ponderar otras alternativas distintas al encarcelamiento, tales como el plan de pago propuesto a la parte alimentista o el embargo de bienes privativos. Además, ordenó que se pospusieran el posible arresto y encarcelamiento por desacato hasta que se verificara si realmente se han dado los cambios sustanciales en la situación económica del padre de los menores. [5]
El Sr. Pórtela Torres interpretó ese dictamen como una autorización para que en la vista sobre los cambios sustanciales en sus circunstancias se consideraran también los alegados cambios sustanciales en las circunstancias de la Sra. Blanco. A esos efectos, le cursó un interrogatorio a la Sra. Blanco, como parte del descubrimiento de prueba dirigido a establecer el cambio en las circunstancias económicas de ella. La Sra. Blanco solicitó una orden protectora para que se le eximiera de contestar el interrogatorio que le cursó el Sr. Pórtela Torres. El Tribunal de Primera Instancia acogió la solicitud de la Sra. Blanco y dictó la orden protectora solicitada.
Inconforme, el Sr. Pórtela Torres recurrió nuevamente a este Tribunal para cuestionar ese dictamen. El 20 de marzo de 2009, este panel emitió una sentencia y revocó la resolución del tribunal a quo. Resolvimos que en un proceso para evaluar la modificación de una pensión alimentaria por alegados cambios sustanciales en las circunstancias del padre no custodio, procede un descubrimiento de prueba en contra de la madre custodia para evaluar si ésta sufrió cambios sustanciales en sus circunstancias que podrían afectar la determinación sobre la pensión final, particularmente la parte correspondiente a la pensión suplementaria, la cual se computa a base de los ingresos combinados de ambos padres. [6]
En el caso de autos, los peticionarios señalan que, luego de haberse establecido que en esta etapa del caso es prematuro e improcedente reclamar alimentos a los abuelos, la indagación sobre su capacidad económica para prestar alimentos en exceso de $9,000 mensuales para mantener el estilo de vida de sus nietos, es impertinente a *867 las controversias ante el Tribunal de Primera Instancia. Éstos sostienen su argumento en lo dispuesto en el inciso (a) de la Regla 23.1 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 23.1 (Sup. 2009). [7]
Asimismo, los peticionarios señalan que en el caso de autos está vigente una pensión alimentaria que cubre la pensión básica y todas las suplementarias solicitadas por la Sra. Blanco; que la obligación subsidiaria de los abuelos no se refiere a pagar la pensión que le hayan fijado al padre o a la madre, sino a una obligación directa que puede crear la relación alimentista alimentante entre abuelos y nietos en los casos en que proceda; que los casos en que procede es cuando ni el padre ni la madre están disponibles para alimentar por razones de muerte, incapacidad, ausencia o porque carecen de medios para prestar alimentos; y que la reclamación de alimentos contra los abuelos no es ni puede ser un método de cobro de pensiones atrasadas, así como tampoco está disponible para suplementar ingresos de los padres alimentantes ni para crear un fondo combinado del cual se paguen las pensiones.
En cuanto a este segundo señalamiento de error, la parte recurrida sostiene que la responsabilidad de los abuelos de proveer alimentos a sus nietos se activa cuando ambos padres carecen de medios suficientes para sufragarlos; y que en el caso de autos, la actuación del Tribunal de Primera Instancia fue correcta al permitir el descubrimiento de prueba dirigido a los peticionarios, debido a que el padre de los menores sólo había hecho hasta ese momento cuatro pagos de pensión alimentaria.
B
Las normas reseñadas establecen, primero, que no puede imponerse una obligación al deudor subsidiario si no se ha descartado la posibilidad de pago del obligado principal; y segundo, que la obligación subsidiaria, como su denominación indica, sólo puede subsistir mientras el obligado principal no esté realmente en condiciones de asumir su responsabilidad.
Al aplicar estos dos corolarios de la obligación alimentaria subsidiaria de los abuelos y abuelas podemos hacer justicia, de un lado, a los menores que necesitan de la manutención de sus progenitores y ascendientes para desarrollarse íntegramente en la vida y, de otro, a la generación de la tercera edad que se ve forzada a asumir obligaciones que natural y legalmente le corresponden a la generación intermedia.
Como bien ha pautado la jurisprudencia, si el obligado principal está en condiciones de atender su responsabilidad, no podemos imponerle la obligación aludida al obligado subsidiariamente. Es necesario que se den los criterios esenciales que activan la subsidiariedad para que se desvíe la responsabilidad al patrimonio secundario. Por lo tanto, los progenitores, que son los obligados principalmente, tendrían que demostrar que no pudieron cumplir con su obligación de prestar alimento para que se extienda la obligación subsidiaria de los abuelos paternos. Si ambos progenitores están aptos para asumir la obligación, en la medida de sus posibilidades, o si uno u otro tiene recursos para cumplirla, sobre ellos o él o ella recae la responsabilidad del pago y no sobre el deudor subsidiario.
Para determinar el alcance de la obligación de cada progenitor obligado, y evitar que alguno burle su responsabilidad principal, es menester realizar una rigurosa excusión de los bienes y recursos de ambos progenitores, porque son ellos los obligados principalmente a alimentar a sus hijos e hijas, antes de imponer sobre los abuelos, maternos o paternos, tal obligación.
Al hacer este análisis, hay que considerar los bienes de todo tipo que ambos progenitores, madre y padre, puedan tener acumulados en sus respectivos patrimonios, así como los recursos, talentos o capacidades personales para producir ingresos con los que cada uno de ellos cuente y disponga para atender responsable y equitativamente las necesidades alimentarias de sus propios hijos.
Advertimos que el hecho de que las Guías Mandatorias fijen al padre no custodio una pensión, no elimina *868 del panorama normativo la obligación del progenitor custodio de atender las necesidades alimentarias de sus hijos e hijas, según sus propios recursos económicos, salvadas las acciones de reembolso que tenga disponibles contra el alimentante moroso o incumplidor, antes de acudir a los alimentantes subsidiarios.
No perdamos de vista que ante el incumplimiento de un progenitor de cumplir con su obligación alimentaria, el ordenamiento provee distintos mecanismos o remedios para cobrar los alimentos vencidos, ya sea mediante la legislación especial sobre alimentos o las Reglas de Procedimiento Civil. Entre esos mecanismos se encuentran la acción independiente en cobro de dinero, el embargo de bienes o la solicitud de desacato. Véase la Ley 5, Arts. 23-30, 8 L.P.R.A. sees. 522-529; Reglas 51 y 56 de Procedimiento Civil, 32 L.P. R.A. Ap. Ill, R. 51 y R. 56.
Actualmente, este caso se encuentra en la etapa de determinar si efectivamente las circunstancias de ambos padres han cambiado: debe considerar si ha habido una merma de recursos en el caso del Sr. Pórtela Torres y si efectivamente ocurrió un aumento sustancial en los recursos de la Sra. Blanco. El Tribunal de Primera Instancia deberá hacer esta determinación y resolver si procede una modificación de la pensión alimentaria fijada para los menores, al tomar en consideración que el pago de la pensión se reparte entre los alimentantes en proporción a sus respectivos caudales.
Del historial del caso y de las constancias del expediente, surge palmariamente que en el caso de autos, el Tribunal de Primera Instancia no ha resuelto todavía si real y efectivamente ambos padres de los menores están incapacitados o no cuentan con suficientes recursos para cumplir con su obligación de proveer alimentos a sus hijos menores. El tribunal a quo aún no ha determinado que éstos carecen de medios suficientes para sufragar cabalmente los alimentos de sus hijos. Esta determinación es un requisito sine qua non para imponer a los abuelos la obligación del pago de una pensión alimentaria a sus nietos, al tratarse de una obligación de carácter subsidiario.
Como bien indica la representación de los peticionarios en su petición, la reclamación de alimentos contra los abuelos no es ni puede ser un método de cobro de pensiones atrasadas, como tampoco está disponible para suplementar involuntariamente los ingresos de los padres alimentantes o crear un fondo combinado del cual se paguen las pensiones fijadas a los nietos. Es una obligación independiente que debe configurarse de manera apropiada y en atención del binomio necesidad y recursos de unos nuevos protagonistas: los nietos de un lado y los abuelos del otro.
Por lo expresado, es improcedente la causa de acción incoada en este caso contra los peticionarios, por lo que procede su desestimación. Ante este desenlace, no es necesario discutir el error relativo a la Ley del Caso.
IV
En virtud de lo expuesto anteriormente, resolvemos expedir el auto de certiorari solicitado, revocar la resolución recurrida y desestimar la causa de acción incoada contra los peticionarios Leonardo Pórtela Morales y Nancy Torres Bulls.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 31

. El tribunal a quo determinó que la propiedad donde residía la Sra. Blanco con los menores estaba valorada en $4.5 millones y no pagaba hipoteca, pero sí una cuota de mantenimiento de $525, correspondiente esa cantidad únicamente a la *869 participación de los menores. Determinó que los gastos estimados para los menores consistían en gastos de matrícula anual por $2,569.50, sin incluir las mensualidades que pagaba el Sr. Pórtela. Además, existían gastos médicos no cubiertos por el plan médico por $530.19, que incluían las visitas al médico, medicinas, dentista, espejuelos y siquiatra; gastos extraordinarios de entretenimiento, barbería, actividades extracurriculares y almuerzos en el colegio por $785.

. El caso corresponde al KLCE-2007-00892. El Juez Luis Rivera Román emitió un voto disidente por escrito en el que indicó que la causa de acción contra los abuelos debía desestimarse y que todos los esfuerzos judiciales debían dedicarse a tramitar prontamente la reclamación en contra del padre de los menores.

. La Guías Mandatorias dividen el pago de la pensión en dos renglones: la pensión básica, que cubre todos los gastos indispensables recurrentes y cotidianos de un alimentista; y la pensión suplementaria, que cubre los gastos especiales que éste tiene, por razón de que cursa estudios en una institución privada, por el pago de la renta o el préstamo hipotecario de la vivienda donde reside habitualmente y por su cuido temporal por terceras personas, siempre que sea para permitir a la persona custodio que trabaje o realice una actividad remunerada.

. El caso corresponde al KLCE-2008-00434.

. El caso corresponde al KLCE-2009-00050.

. El caso corresponde al KLCE-2009-00344.

. El inciso (a) de la Regla 23.1 de Procedimiento Civil, antes citada, establece como sigue:
“(a) En general. — Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera la reclamación o defensa de cualquier oha parte, incluyendo la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible.”