| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL VII | | |
| JOSÉ M. RIVERA ROSADO<br><br>Recurrido<br><br>V.<br><br>MARTA M. CORTEZ NIEVES<br><br>NATALIA N. RIVERA CORTÉS<br><br>Peticionaria | TA2025CE00512 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Sobre: Alimentos<br><br>Civil Núm.:<br>D AL2005-0183 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Rodríguez Casillas, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de enero de 2026.

Comparece ante nos la joven Natalia N. Rivera Cortés t/c/c Natalia N. Rivera Cortez (en adelante, "la joven Rivera Cortés", "alimentista" o "Peticionaria") mediante petición de *certiorari* para que revoquemos la *Resolución* emitida el 25 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI").[1] En esta, el **TPI** descalificó al representante legal de la señora Marta M. Cortez Nieves t/c/c Marta M. Cortés Nieves (en adelante, "señora Cortez Nieves" o "madre de la Peticionaria") para representar a la **joven Rivera Cortés** y relevó al padre alimentante, señor José M. Rivera Rosado (en adelante, "señor Rivera Rosado", "padre alimentante" o "Recurrido"), de su obligación de alimentar a la **Peticionaria**, a pesar de que tenía atrasada la pensión alimentaria antes de que la **alimentista** cumpliera la mayoría de edad.

---

[1] Notificada el 29 de agosto de 2025.

Perfeccionado el recurso, procedemos a **expedir y modificar** la *Resolución* recurrida. Veamos.

**-I-**

Según surge del expediente, la **señora Cortez Nieves** y el **señor Rivera Rosado** procrearon dos (2) hijos, la **joven Rivera Cortés** y su hermano, el joven Manuel José Jr. Rivera Cortés (en adelante, el joven Rivera Cortés). Allá para el **31 de enero de 2005**, el **señor Rivera Rosado** presentó una *Petición* en la cual solicitó la imposición de pensión alimentaria para sus hijos.[2] Así las cosas, el TPI le impuso una pensión de $50.00 semanales.

Tiempo después, el **9 de febrero de 2011**, se celebró una vista sobre revisión de pensión alimentaria ante la Examinadora de Pensiones Alimentarias asignada al caso. El **señor Rivera Rosado** y la **señora Cortez Nieves** comparecieron e informaron que ambos acordaron aumentar la cuantía de la pensión alimentaria a $75.00 semanales. El **16 de febrero de 2011**, el **TPI** aprobó el acuerdo alcanzado entre los progenitores y emitió la correspondiente *Resolución y Orden*.[3] Por lo cual, la pensión se depositaría a nombre del Administrador de la Administración para el Sustento de Menores (en adelante, ASUME); además, y en lo pertinente dispuso:

> *[l]a pensión alimentaria aquí establecida, regirá entre las partes hasta que este Tribunal haga una nueva determinación. La misma no se modificará a menos que ocurran cambios significativos o imprevistos en las circunstancias de alguna de las partes, o cuando al momento de adoptar el acuerdo, se desconociera información pertinente por causas no atribuibles a las partes perjudicadas. Esta pensión alimentaria podrá revisarse transcurridos tres (3) años contados desde la fecha en que la misma fue establecida o modificada.*

Varios años más tarde, el **21 de marzo de 2025**, la **señora Cortez Nieves** compareció por **derecho propio** y presentó una *Moción sobre desacato*, como progenitora custodia con patria

---

[2] Apéndice 24 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.
[3] Apéndice 25 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.

potestad.[4] En esencia, alegó que el **señor Rivera Rosado** adeudaba la suma de **$37,058.50** de pensión alimentaria, por lo que anejó una *Certificación* de **ASUME** para acreditar la suma reclamada conforme a la cuenta: 0379296 registrada en dicha agencia.

El **28 de marzo de 2025**, el **TPI** notificó una *Orden* en la cual le requirió a la **señora Cortez Nieves** a llevar su reclamo ante **ASUME**.[5] Ello respondió a que el caso tenía un referido a **ASUME** Interestatal.

El **21 de abril de 2025**, la **señora Cortez Nieves** compareció nuevamente ante el **TPI** por conducto de su representante legal, el Lcdo. Miguel A. Montes Díaz (en adelante, licenciado Montes Díaz),[6] y presentó una *Moción en auxilio de la jurisdicción del tribunal reiterando solicitud de desacato*.[7] En apretada síntesis, informó que acudió a las oficinas de alimentos de menores sitas en Atlanta, Georgia y allí le informaron que no contaban con el récord del caso. Además, le indicaron que no tenían jurisdicción ni competencia para atender el asunto, puesto que la **joven Rivera Cortés** era mayor de 18 años. Ante este cuadro, la **señora Cortez Nieves** arguyó que el **TPI** tenía jurisdicción exclusiva sobre la solicitud de desacato. Por ello, solicitó la celebración de una vista evidenciaria en desacato a la mayor brevedad posible.

Así las cosas, el **29 de abril de 2025**, el **TPI** emitió una *Orden* en la cual le concedió diez (10) días a la **señora Cortez Nieves** para informar y acreditar mediante certificación de **ASUME** el monto de la deuda reclamada. Por ello, el **16 de mayo de 2025**, presentó una *Moción a tenor con orden*. Allí, informó que conforme a la *Certificación* de **ASUME**, anejada a su escrito, la deuda sobre pensión alimentaria ascendía a **$34,086.25**.

---

[4] Apéndices 1 y 23 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.
[5] Apéndice 2 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.
[6] Apéndice 3 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.
[7] Apéndice 4 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.

En vista de la cantidad adeudada, el **3 de junio de 2025**, el **TPI** le concedió al **señor Rivera Rosado** diez (10) días para presentar evidencia del pago de la deuda reclamada de pensión alimentaria.[8]

El **20 de junio de 2025**, el **padre alimentante** presentó una *Moción en solicitud de remedio*.[9] Arguyó que la **señora Cortez Nieves** no estaba facultada para reclamar la deuda sobre pensión alimentaria, ya que el **joven Rivera Cortés** advino a la **mayoría de edad** en el año 2022. Por otra parte, señaló que la **joven Rivera Cortés** alcanzaría la mayoría de edad prontamente; indicó, el **8 de julio de 2025** como la fecha de cumpleaños. En vista de ello, le solicitó al **TPI** que dejara sin efecto los trámites sobre cobro de pensión alimentaria adeudada.

No obstante, el **2 de julio de 2025**, el TPI emitió una *Orden* en la que le concedió al **señor Rivera Rosado** dos (2) días para acreditar el pago de la deuda de pensión alimentaria, **so pena de sanciones**.[10]

En respuesta, el **7 de julio de 2025**, el **señor Rivera Rosado** presentó una *Moción en solicitud de relevo de pensión alimentaria y reiterada solicitud de remedio*.[11] **Sin acreditar el pago de la deuda de pensión alimentaria atrasada**, arguyó que, a la fecha de evaluación del presente caso, sus dos (2) hijos advinieron a la mayoría de edad y era su interés solicitar formalmente el relevo de la pensión alimentaria. Para sustentar su solicitud, argumentó que ambos hijos tenían trabajos para su sostenimiento, constituyeron sus propias familias y residían fuera de Puerto Rico desde hacían años. Arguyó que el estado de derecho vigente impedía que la **señora Cortez Nieves** reclamara la pensión alimentaria adeudada de sus

---

[8] Apéndice 7 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.
[9] Apéndice 8 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.
[10] Apéndice 9 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.
[11] Apéndice 10 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.

hijos adultos. Por lo que, ahora les correspondía a sus hijos adultos solicitar el cobro de la pensión alimentaria adeudada. De ese modo, indicó que conocía de la existencia de una deuda por concepto de pensión alimentaria atrasada. No obstante, rechazó la cuantía informada por **ASUME**. Por ello, solicitó que se le ordenara a **ASUME** realizar una auditoría de la deuda para poder confrontarla con los pagos que alegadamente había realizado.

Llegada la fecha del **8 de julio de 2025**, la **joven Rivera Cortés** advino a la mayoría de edad.

Por lo cual, el **9 de julio de 2025**, el TPI emitió una *Orden* en la cual le concedió a **los jóvenes adultos Rivera Cortés** un término de veinte (20) días para fijar su posición sobre la solicitud de relevo de pensión, so pena de concederse el remedio solicitado por el **padre alimentante**.[12] De otro lado, y en el mismo término, **los jóvenes adultos Rivera Cortés** debían informar **si renunciaban al cobro de la deuda de pensión alimentaria adeudada**. Para ello, debían presentar una declaración jurada.[13]

El **23 de julio de 2025**, la **joven Rivera Cortés** y su madre, la **señora Cortez Nieves** comparecieron mediante la representación legal del **licenciado Montes Díaz** y presentaron una *Réplica a "Moción en solicitud de relevo de pensión alimentaria y reiterada solicitud de remedio"*.[14] En apretada síntesis, **ambas** se opusieron al relevo de la deuda de la pensión alimentaria solicitado por el **señor Rivera Rosado**. Específicamente, en el párrafo número 4 de dicha *Réplica* se informó que "[a]*demás, Natalia Nicole Rivera Cortés*

---

[12] Apéndice 11 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.
[13] El **joven Rivera Cortés** compareció el **7 de agosto de 2025**, mediante *Segunda moción en cumplimiento de orden*, debidamente juramentada. Reafirmó el relevo de pago de la pensión alimentaria en su beneficio. Ello, retroactivo al 16 de agosto de 2022, fecha en que alcanzó la mayoría de edad. Además, se reservó el derecho a cobrar cualquier deuda dentro del término dispuesto por ley. Véase, Apéndice 15 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.
El **12 de agosto de 2025**, el TPI emitió una *Resolución* en la cual relevó al **señor Rivera Rosado** de su deber de alimentar al **joven Rivera Cortés, efectivo el 16 de agosto de 2022**. Véase, Apéndice 17 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.
[14] Apéndice 12 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.

*informa que, en estos momentos, **no renuncia al cobro de la deuda***". También, adujeron que de acuerdo con la Ley Orgánica de la Administración para el Sustento de Menores, *infra,* en aquellos casos donde el menor advenga a la mayoría de edad, el tribunal debía celebrar una vista evidenciaria expedita. Esto, para pasar juicio en torno a si la **alimentista** tenía derecho a continuar recibiendo la pensión alimentaria. Por ello, la joven **Rivera Cortés** y la **señora Cortez Nieves** solicitaron que el **TPI** señalara una vista evidenciaria expedita.

No obstante, el **29 de julio de 2025**, el **TPI** emitió una *Orden* en la cual relevó al **licenciado Montes Díaz** de la representación legal de la **señora Cortez Nieves.**[15] Razonó que el abogado incurrió en un conflicto de interés al presentar la referida *Réplica* indicando que representaba, tanto a la **Peticionaria** como a su madre, la **señora Cortez Nieves**.

Inconforme, el **1 de agosto de 2025**, la **señora Cortez Nieves** compareció —por conducto del **licenciado Montes Díaz**— mediante *Solicitud de reconsideración de orden.*[16] En esencia, el abogado reafirmó su postura en cuanto a la necesidad de celebrar una vista evidenciaria expedita, conforme a la Ley Orgánica de la Administración para el Sustento de Menores, *infra.* Sobre su descalificación como abogado, arguyó que no incurrió en representación legal dual, ni en representación sucesiva adversa. Añadió que —a su juicio profesional— no estaba, ni podía quedar afectado por sus intereses personales. Por lo que, insistió en que no existía indicio alguno, ni la apariencia de que estuviera inhabilitado para continuar con la representación legal de la **señora Cortez Nieves** y/o la **joven Rivera Cortés**.

---

[15] Apéndice 13 de la Entrada Núm. 1 del caso TA2025CE00512 de SUMACTA.
[16] Apéndice 14 de la Entrada Núm. 1 del caso TA2025CE00512 en el SUMACTA.

El **11 de agosto de 2025**, la **señora Cortez Nieves** presentó una *Moción* solicitando sustitución de parte.[17] En resumidas cuentas, le solicitó al **TPI** que se le sustituyera por la **joven Rivera Cortés** y que el **licenciado Montes Díaz** continuaría como su abogado.

El **21 de agosto de 2025**, el **señor Rivera Rosado** presentó una *Moción en cumplimiento de orden*.[18] En síntesis, reiteró que procedía el relevo de la pensión alimentaria debido a que: **(1)** la reclamación de la **joven Rivera Cortés** era una de alimentos entre parientes y no de pensión alimentaria para una menor; **(2)** la **Peticionaria** goza de un empleo y constituyó su propia familia; **(3)** la **alimentista** no argumentó ni presentó evidencia documental que demostrara su cumplimiento con el criterio rector de necesidad para acreditarle una pensión de alimentos entre parientes; **(4)** si la suma de la cantidad adeudada por alimentos fuese correcta, no le correspondería a la **Peticionaria** en su totalidad;[19] y, **(5) la alimentista** no fijó su posición en cuanto al relevo de la pensión alimentaria atrasada por lo que, reafirmó su solicitud de relevo de pensión. Por otra parte, el **padre alimentante** sostuvo que la cantidad reclamada de pensión alimentaria atrasada era incorrecta y que ello conllevaría la celebración de una auditoría y la evaluación de los pagos recibidos por la **madre de la Peticionaria**. Aseguró que de suscitarse lo anterior, el **licenciado Montes Díaz** podría incurrir en una representación sucesiva adversa, ya que las defensas de la **Peticionaria** podrían afectar a la **señora Cortez Nieves** y viceversa.

---

[17] Apéndice 16 de la Entrada Núm. 1 del caso TA2025CE00512 en el SUMACTA. Según surge de la *Petición de Certiorari* ante este tribunal apelativo, la **Peticionaria** presentó la *Moción* solicitando sustitución de parte.

[18] Apéndice 18 de la Entrada Núm. 1 del caso TA2025CE00512 en el SUMACTA.

[19] Esta alegación está basada en el hecho de que el **7 de agosto de 2025**, el **joven Rivera Cortés** compareció, mediante declaración jurada y relevó —de la pensión alimentaria en su beneficio— a su padre. Ello fue retroactivo al 16 de agosto de 2022, fecha en que alcanzó la mayoría de edad. Véase, Apéndice 15 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.

En respuesta, el **27 de agosto de 2025**, la **joven Rivera Cortés** presentó —nuevamente por conducto del **licenciado Montes Díaz**— una *Réplica a moción en cumplimiento de orden*. [20] En apretada síntesis, aseguró que su interés era continuar la causa de acción que su madre, la **señora Cortez Nieves**, inició sobre cobro de pensiones alimentarias **atrasadas**. Señaló que el **3 de junio de 2025**, el **TPI** le había concedido diez (10) días al **padre alimentante** para presentar evidencia del pago de la deuda por concepto de pensión alimentaria, so pena de desacato. No obstante, indicó —que tras haber el **alimentante** incumplido con su obligación de pagar la pensión alimentaria— y con las múltiples órdenes de pago de pensión alimentaria, el TPI no lo había penalizado. Además, aclaró que su causa de acción no era una sobre alimentos entre parientes por lo que, no habría un conflicto que ameritara la descalificación del **licenciado Montes Díaz**.

El **25 de agosto de 2025**, notificada el **29 de agosto de 2025**, el **TPI** emitió una *Resolución* en la cual, declaró *No Ha Lugar* la *Solicitud de reconsideración de orden* presentada por la **señora Cortez Nieves**.[21] Así, reiteró el relevo y descalificó al **licenciado Montes Díaz** como representante legal de la **joven Rivera Cortés**. Además, —sin haber determinado la cantidad de la pensión alimentaria adeudada— relevó al **señor Rivera Rosado** de la obligación de alimentos, toda vez que transcurrió el término para que la **Peticionaria** fijara su posición.

Por otra parte, el **29 de agosto de 2025**, el **TPI** emitió una *Orden* mediante la cual atendió la *Réplica* presentada por la **joven Rivera Cortés**. Lo anterior responde a que la *Resolución* del 25 de agosto de 2025, se notificó con posterioridad a la presentación de la referida *Réplica*. En esencia, remitió a la **Peticionaria** a su

---

[20] Apéndice 19 de la Entrada Núm. 1 del caso TA2025CE00512 en el SUMACTA.
[21] Apéndice 20 de la Entrada Núm. 1 del caso TA2025CE00512 en el SUMACTA.

determinación del 25 de agosto de 2025 y señaló que le correspondía a la **alimentista** realizar cualquier gestión para el cobro de la deuda que por sí alegara.

Inconforme, la **Peticionaria** acude ante este foro intermedio y nos plantea la comisión del siguiente error:

> *El Tribunal de Primera Instancia erró al relevar a la parte demandante de su obligación de alimentar a Natalia Nicole Rivera Cortés, ya que, alegadamente, ésta no fijó su posición en cuanto a la solicitud de relevo de la obligación de alimentar del alimentante (véase (Apéndice 12 de la Parte Recurrente); sin considerar el interés público vinculado a las pensiones alimentarias; omitiendo resolver la solicitud de desacato; sin dar fiel cumplimiento al debido proceso [de] ley; al desproveerle de una adecuada representación legal de su libre selección; causándole extremo perjuicio y daños.*

Este Tribunal le concedió un plazo de diez (10) días al **señor Rivera Rosado** para mostrar causa por la cual no debíamos expedir el recurso solicitado. Sin embargo, el **Recurrido** no compareció. Ante este cuadro, damos por perfeccionado el recurso para nuestra consideración.

## -II-

## -A-

El auto de *certiorari* es un medio procesal de carácter discrecional que, a su vez, permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[22] Así, se entiende por discreción como el poder para decidir en una forma u otra; esto es, para escoger entre uno o varios cursos de acción.[23]

Por ello, la Regla 52.1 de Procedimiento Civil, delimita las instancias en que habremos de atender —vía certiorari— las resoluciones y órdenes emitidas por los tribunales de instancia:

> *[E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 <u>o de la denegatoria de una moción de carácter dispositivo</u>. No obstante, y por <u>excepción</u> a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la*

---

[22] *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 711 (2019); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337 – 338 (2012).
[23] *García v. Asociación*, 165 DPR 311, 321 (2005).

*admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, <u>en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.</u> Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.* [...].[24]

Bajo el carácter de discrecionalidad, la Regla 40 del Reglamento de este Tribunal de Apelaciones establece los siguientes criterios para mostrar causa o para la expedición del auto de *certiorari*; a saber:

*(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
*(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*
*(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
*(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
*(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
*(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
*(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*[25]

En consecuencia, el Tribunal Supremo de Puerto Rico ha dispuesto que:

*[d]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[26]

De manera tal, que si la actuación o determinación del tribunal recurrido no está desprovista de base razonable —ni perjudica los derechos sustanciales de las partes— deberá

---

[24] Regla 52.1 de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1. *Énfasis nuestro.*
[25] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62 – 63, 215 DPR __ (2025).
[26] *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

prevalecer el criterio del juez de instancia a quien le corresponde la dirección del proceso.[27]

**-B-**

El deber de alimentar a los hijos es inseparable de la paternidad. El mismo surge desde que la relación filial queda legalmente establecida.[28] La obligación general de proveer alimentos entre parientes se encuentra regulada por nuestro Código Civil y la Ley Núm. 5 de 30 de diciembre de 1986, conocida como la *Ley Orgánica de la Administración para el Sustento de Menores* (en adelante, "Ley de ASUME").[29]

La política pública del Gobierno de Puerto Rico es procurar "*que los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias*".[30]

Es decir, la **Ley de ASUME**, *supra*, tiene como propósito primordial el fortalecer y agilizar los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias. Por tanto, sus disposiciones deberán interpretarse liberalmente a favor de los mejores intereses del menor o alimentista que necesita alimentos.[31] Es esta ley es la que establece el procedimiento para fijar, modificar o revisar las pensiones alimentarias.

Ahora bien, y conforme al inciso (c) del Artículo 19 de la **Ley de ASUME**, la pensión alimentaria en beneficio de un menor de edad

---

[27] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).
[28] *De León Ramos v. Matta Irizarry*, 198 DPR 916, 923 (2017).
[29] 8 LPRA sec. 501 *et seq.*
[30] 8 LPRA sec. 502.
[31] 8 LPRA sec. 502.

se extingue, entre otras razones, con la emancipación del menor por razón de haber alcanzado su mayoría de edad.[32] Sin embargo, la pensión alimentaria establecida durante la minoridad *mantiene su vigencia hasta que el alimentante solicite el relevo de su obligación.*[33] Para adjudicar la procedencia del relevo "*el Tribunal deberá celebrar una vista evidenciaría expedita para pasar juicio en torno a si el joven adulto tiene derecho a continuar recibiendo la pensión alimentaria al amparo de lo dispuesto en el Artículo 658 del Código Civil*".

### -C-

En lo que respecta a la prescripción extintiva de pensiones alimentarias adeudadas luego de alcanzada la mayoría de edad, el Artículo 675 del Código Civil,[34] dispone que estas prescriben por el transcurso de los cinco (5) años las acciones para exigir el cumplimiento de las obligaciones de pagar pensiones alimenticias. El propósito de esta legislación es proteger al deudor contra la acumulación indefinida de la deuda.[35] La prescripción del Artículo 675 del Código Civil se dirige a un alimentista menor de edad que tiene un plazo de cinco años **—luego de advenir a la mayoridad—** para ejercer la causa de acción para el cobro de pensiones alimentarias **adeudadas hasta esa fecha**. Es decir, cada una de las pensiones vencidas y no satisfechas —de ser exigibles— prescribe a los cinco años **desde** la fecha en que debieron pagarse o pudieron cobrarse. Cada mensualidad vencida se considera una obligación prescrita al cabo de cinco (5) años de su fecha de vencimiento.[36]

En cuanto a los progenitores que pretenden cobrar las pensiones alimenticias vencidas o atrasadas, se ha resuelto que una vez cesa la incapacidad por minoridad, los progenitores no pueden

---

[32] 8 LPRA sec. 518 (c).
[33] *Íd.* Énfasis nuestro.
[34] 31 LPRA sec. 7571.
[35] *Rodríguez Avilés v. Rodríguez Beruff,* 117 DPR 616 (1986).
[36] Véanse *Rodríguez Avilés v. Rodríguez Beruff, supra; Brea v. Pardo,* 113 DPR 217 (1982).

acudir a los tribunales a representar los intereses de sus hijos.[37] Aun cuando haya sido el progenitor quien inició la acción originalmente, este solo lo hace como representante del menor ya que **la causa de acción le pertenece al hijo y no al progenitor**.[38]

Es importante indicar que el alimentante tiene el deber de poner al tribunal en conocimiento de que sus hijos alimentistas están próximos a llegar a la mayoridad y su interés de ser relevado del pago de la pensión alimentaria.[39] En ese sentido, la pensión otorgada a un menor de edad continuará en vigor, aunque advenga a la mayoría de edad, **hasta que no se realice el trámite procesal descrito**. La referida moción se le notificará al alimentista, de modo que: *pueda comparecer dentro de ese mismo pleito; establecer a nombre propio que sus necesidades permanecen vigentes; y, que reúne los requisitos que le hacen acreedor de la pensión a pesar de que ya es mayor de edad.*[40] Entonces, solo restará que el tribunal —*tomando en consideración las circunstancias particulares de cada caso*— evalúe si procede relevar al padre alimentante de la obligación que se le había impuesto hasta ese momento.

Ahora, si el tribunal decide relevar al alimentante de la pensión alimentaria —como regla general— la efectividad **será prospectiva y coincidirá con la fecha en que se resuelva que proceden**.[41] No obstante, el tribunal primario tiene discreción y facultad para ordenar que su dictamen se **retrotraiga** a la fecha en que formalmente se le solicitó tal remedio, **siempre y cuando las circunstancias del caso así lo ameriten**.[42]

---

[37] *Santiago Maisonet v. Maisonet*, 187 DPR 550, 573 (2012).
[38] *Íd*. Véase, *Toro Sotomayor v. Colón Cruz*, 176 DPR 528 (2009); *Ríos Rosario v. Vidal Ramos*, 134 DPR 3, 10-11. (1993).
[39] *Santiago Maisonet v. Maisonet, supra*, a la pág. 576.
[40] *Íd*.
[41] *Rivera et al. v. Villafañe González*, 186 DPRA 289, 296 (2012). Cita en aprobación a *Valencia, Ex parte*, 116 DPR 909 (1986).
[42] *Íd*.

Por lo tanto —en lo pertinente a este caso— *un alimentante puede solicitar un relevo de pensión alimentaria atrasada o vencida cuando han transcurrido cinco años o más desde que el alimentista advino a la mayoría de edad.* En ese caso, **el tribunal de instancia deberá calendarizar una vista evidenciaria** para examinar: **(1)** cuál es la edad actual del alimentista; **(2)** cuál es la cantidad exacta de la pensión vencida o atrasada; **(3)** desde qué fecha se dejó de pagar la pensión; **(4)** cuánto tiempo ha trascurrido desde que el alimentista advino a la mayoría y presentó o no un reclamo de la pensión alimentaria atrasada o vencida; **(5)** si el término prescriptivo de cinco años fue interrumpido; **(6)** qué cantidades están prescritas. Estas y, otras preguntas, deberá hacer el tribunal con el fin de determinar la deuda de pensión alimentaria, si la misma está prescrita y, en consecuencia, el alimentante queda exonerado de pagar la misma. Claro está, deberá notificar al alimentista para que pueda presentar sus objeciones, si algunas.

### -D-

La Regla 9.3 de Procedimiento Civil provee que los tribunales, en el ejercicio de su poder inherente de supervisar la conducta de los abogados que postulan ante sí pueden, *motu proprio* o a solicitud de parte, descalificar a aquellos miembros de la profesión legal que incurran en conducta que constituya un obstáculo para la sana administración de la justicia o infrinjan sus deberes para con el tribunal, sus representados o compañeros abogados.[43] En otras palabras, un tribunal puede ordenar la descalificación de un representante legal cuando ello abone a la adecuada marcha del litigio y sea necesario para lograr la justa, rápida y económica solución de un pleito.[44]

---

[43] 32 LPRA Ap. V, R. 9.3.
[44] *Job Connection Center v. Sups. Econo*, 185 DPR 585, 596 (2012); *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 661 (2000).

Una orden de descalificación puede proceder tanto para prevenir una violación a cualquiera de los Cánones de Ética Profesional o para evitar actos disruptivos de los representantes legales de las partes durante el trámite de un pleito.[45] Cabe aclarar, que el procedimiento de descalificación no constituye por sí solo una acción disciplinaria.[46] Toda vez que la descalificación de un abogado afecta negativamente varios aspectos de un caso, tales como los derechos de las partes y el trámite de los procedimientos, esta no debe autorizarse ligeramente.[47] Dicha acción debe tomarse solo cuando sea estrictamente necesario, pues se considera un remedio drástico que debe ser evitado cuando existan medidas menos onerosas que aseguren la integridad del proceso judicial y un trato justo a las partes.[48]

A la hora de evaluar la procedencia de la descalificación de un abogado, le corresponde al tribunal hacer *"un balance entre el efecto adverso que la representación legal pudiera tener sobre los derechos de las partes a un juicio justo e imparcial, y en el sistema judicial".* [49] En vista de que las mociones de descalificación constituyen medidas preventivas, su mera presentación por una parte no dará lugar a su concesión, sino que el tribunal debe hacer un análisis de la totalidad de las circunstancias. En particular, debe tomar en consideración los siguientes factores:

> *(i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el expertise de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos.*[50]

---

[45] *Íd.*
[46] *Job Connection Center v. Sups. Econo, supra*, a la pág. 596; *K-Mart Corp. v. Walgreens of P.R., Inc.*, 121 DPR 633, 638 (1988).
[47] *Job Connection Center v. Sups. Econo, supra*, págs. 596-597.
[48] *Íd.*, a la pág. 597.
[49] *Íd.*
[50] *Íd.*, a las págs. 597-598; *Liquilux Gas Corp. v. Berríos, Zaragoza*, 138 DPR 850,

**-III-**

En el caso de autos, la **joven Rivera Cortés** aduce que el **TPI** erró al autorizar el relevo del **señor Rivera Rosado** de su obligación de alimentarla, sin haber atendido su solicitud de desacato sobre la pensión alimentaria adeudada por el **alimentante** y reclamada antes y después de alcanzar su mayoría de edad. De otro lado, la **Peticionaria** señala que el **TPI** incumplió con el debido proceso de ley al desproveerle de una adecuada representación legal de su libre selección, causándole extremo perjuicio y daños.

De umbral, coincidimos en parte con **la joven Rivera Cortés**. Explicamos.

**En primer orden**, el récord ciertamente revela que existe una deuda de pensión alimentaria atrasada y que el **señor Rivera Rosado** incumplió con su deber de pago desde **antes** que la **Peticionaria** alcanzara su mayoría de edad. Nótese que, desde el **3 de junio de 2025**, el **TPI** le solicitó al **Recurrido**, so pena de desacato, presentar evidencia del pago de la pensión alimentaria adeudada. Sin embargo, el **padre alimentante** nunca presentó la evidencia sobre los pagos adeudados, sino que solicitó el relevo de la pensión alimentaria antes de que la **alimentista** alcanzara la mayoría de edad. Todavía más, el expediente refleja que la **Peticionaria** fijó su oposición en cuanto a la solicitud de relevo del **señor Rivera Rosado**.

Es decir, quedó claro que la **joven Rivera Cortés** no solicitó alimentos entre parientes, **sino que peticionó el pago de la deuda sobre pensión alimentaria atrasada**; incluso, antes de alcanzar la mayoría de edad la **madre de la Peticionaria** solicitó el pago adeudado. Por lo tanto, el argumento del **Recurrido** sobre la ausencia de necesidad por parte de la **Peticionaria** no tiene cabida

864-865 (1995).

en el caso de autos. Reiteramos que la controversia de este caso no se trata de una solicitud de alimentos entre parientes, sino de una pensión alimentaria adeudada.

Ahora bien, del mismo récord se desprende que existe controversia con el **monto total** que el **padre alimentante** le adeuda a la **Peticionaria**.[51] Por lo cual, para determinar **a cuánto ascendía la deuda**, resultaba imprescindible que el **TPI** celebrara una vista evidenciaria **antes** de relevar al **señor Rivera Rosado** del pago de la pensión alimentaria adeudada. Esto no ocurrió. A nuestro juicio, el relevo autorizado fue en extremo apresurado, y sobre todo, contrario a la normativa aplicable.

En consecuencia, se deja sin efecto el relevo de la obligación alimentaria del **padre alimentante** hasta que el TPI celebre la vista evidenciaria de desacato. Allí, se deberá fijar la cantidad de pensión alimentaria adeudada que corresponda —únicamente— a la **joven Rivera Cortés**. Por su parte, el **señor Rivera Rosado** podrá presentar evidencia sobre los pagos efectuados a dicha deuda.

**En segundo orden**, en cuanto a la descalificación del **licenciado Montes Díaz**, diferimos de la posición de la **Peticionaria**. Surge del expediente que el **licenciado Montes Díaz** representó a la **señora Cortez Nieves** en el caso de autos durante la minoría de edad de la **joven Rivera Cortés**. No obstante, luego de que la **Peticionaria** alcanzó la mayoría de edad, este continuó en el caso como representante legal de la **joven adulta**. Inclusive, del escrito presentado el **23 de julio de 2025**, surge que representó a la **alimentista** (adulta para esa fecha) y a su madre, la **señora Cortez Nieves,** al **mismo tiempo**. No obstante, afirma que la inclusión de la **madre de la Peticionaria** en el escrito fue un error.

---

[51] Entre otras razones, el hecho de que el 7 de agosto de 2025, el **joven Rivera Cortés** compareció mediante declaración jurada y aceptó se relevara al **señor Rivera Rosado** del pago de la pensión alimentaria en su beneficio. Retroactivo al 16 de agosto de 2022, fecha en que alcanzó la mayoría de edad. Véase, Apéndice 15 de la Entrada Núm. 1 del caso TA2025CE00512 en SUMACTA.

En dicho escrito, el **licenciado Montes Díaz** redactó "***COMPARECEN**, la parte demandada, Marta M. Cortez Nieves **y** la alimentista, Natalia Nicole Rivera Cortez* […]".[52] Nos resulta difícil creer que la inclusión de la **señora Cortez Nieves** fue un error, cuando claramente el escrito así lo denota. Somos del criterio que la descalificación del **licenciado Montes Díaz** estuvo justificada; máxime, cuando la presencia de la **madre de la Peticionaria** resulta indispensable para determinar la cantidad adeudada por el **padre alimentante**, por lo que ello conlleva un riesgo previsible de una representación sucesiva adversa, ya que las defensas de la **Peticionaria** podrían afectar o estar en contravención con las de su madre y viceversa. No obstante, el **TPI** erró al no proveerle un plazo razonable a la **joven Rivera Cortés** para gestionar la contratación de una nueva representación legal.

### -IV-

Por los fundamentos antes expuestos, se **expide** el *auto de certiorari* solicitado para **modificar** la <u>*Resolución*</u> recurrida en cuanto a **dejar sin efecto el relevo de la obligación alimentaria y ordenar la celebración de una vista evidenciaria de desacato para determinar la cuantía exacta adeudada de la pensión alimentaria correspondiente a la joven Rivera Cortés.** Además, se deberá conceder un plazo de treinta (30) días a la **Peticionaria** para contratar una nueva representación legal. Así, se **confirma** la <u>*Resolución*</u> recurrida y se devuelve el caso al **TPI** para que continúe con los procedimientos de conformidad con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[52] Énfasis en original y suplido.